| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------x<br>In re:<br><br>ISAAC SCHINAZI,<br><br>                                Debtor.<br>------------------------------------------------------------------x<br>SAMI TAMMAN and JACQUELINE TAMMAN,<br><br>                Plaintiffs,<br><br>           - against -<br><br>ISAAC SCHINAZI, SONIA SCHINAZI and<br>BRAUNER BARON ROSENZWEIG & KLEIN, LLP,<br>                              Defendants.<br>------------------------------------------------------------------x | For Publication<br><br><br><br>Chapter 7<br>Case No. 06-10226 (BRL)<br><br><br><br><br><br>Adv. Proc. No. 06-01782<br>(BRL) |

APPEARANCES:

FLEMMING ZULACK WILLIAMSON ZUDERER LLP
Attorneys for Plaintiffs
One Liberty Paza
New York, New York 10006-1404
212-412-9500
By: Gregg Kanter, Esq.

PICK & ZABICKI LLP
Attorneys for Debtor-Defendant
369 Lexington Avenue
New York, New York 10017
212-695-6000
By: Douglas J. Pick, Esq.
    Eric C. Zabicki, Esq.

By:    Burton R. Lifland,
        United States Bankruptcy Judge

## MEMORANDUM DECISION EXCEPTING DEBT FROM DISCHARGE PURSUANT TO SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

      Plaintiffs Sami Tamman and Jacqueline Tamman (the "Tammans") move for summary

judgment that their judgment debt is excepted from discharge in its entirety pursuant to section

523(a)(2)(A) of title 11, United States Code (the "Bankruptcy Code"). This is not the first foray into the matters which are the subject of this motion. Previously a jury trial with special verdict was concluded in the District Court for the Southern District of New York (the "District Court Action")[1] with a judgment in favor of the Tammans.

**Background**

The Tammans are related by marriage to Isaac Schinazi (the "Debtor") and have associated with the Debtor since the 1970s when all three lived in Rio de Janeiro. The Debtor worked in Brazil from 1982 through 1990 for the currency exchange business of his father, Samuele Schinazi. After the Debtor moved from Brazil to New York in 1990, he continued to perform services for his father's currency exchange business. From the 1980s through at least 1998, the Tammans had an account with the Debtor's father's currency exchange business through which they accessed local Brazilian currency and paid expenses while visiting Brazil from their residence in Switzerland. Both before and after the Debtor moved to New York in 1990, the Debtor had dealings with the Tammans in connection with their account with the Debtor's father's currency exchange business.

In 1998, the Debtor and the Tammans discussed the terms of a new transaction whereby the Tammans would transfer monies to the Debtor. According to the Tammans, the Debtor represented to the Tammans that the Debtor and his father intended to invest the Tammans' money and that the Debtor and his father would keep any investment returns greater than the appreciation promised the Tammans. The Tammans allege that the Debtor represented to the Tammans that the Tammans' principal was guaranteed, as the Debtor and his father would bear the risk of any losses on the investments they made and that the Tammans' money would be

---

[1] Tamman v. Schinazi, 00 CV 9404 (S.D.N.Y.)

returned upon demand to the Debtor. The Debtor instructed the Tammans to wire money to Lucky Star Financial Corporation ("Lucky Star") and Mabruk Financial Corp. ("Mabruk"), offshore companies over which the Debtor exercised a power of attorney. The Tammans made several deposits beginning in February 1988 and on May 8, 1998, the Debtor provided to the Tammans a receipt of money received (the "Receipt"). The Receipt was signed by the Debtor and provides:

> Receipt is hereby acknowledged of US $ 318,778 as full and final payment by Sami and/or Jacqueline Tamman to be invested by Samy and Isaac Schinazi. Samy and Isaac are fully responsible for the funds. At any end of month this amount can be reimbursed on request to the owner.

Twenty-two months later at a brunch hosted by the Debtor, the Tammans asked the Debtor to update the balance on the Receipt. The Debtor agreed and made the following handwritten notation to the Receipt:

> Updated on 3/14/00 to $1.400.000,00 approximately.

Both the Debtor and his father signed and dated the Receipt after the Debtor made the handwritten notation. The Tammans also received statements of account after each transaction. Those statements generally added two entries: an entry reflecting the new transaction and an entry reflecting the new balance. The balance reflected by the last statement of account the Tamman's received is $1,389,327 on June 9, 2000.

The Tammans asked the Debtor to return their money in the summer of 2000. No monies were returned to the Tammans. When no monies were returned to the Tammans following their demand to the Debtor, the Tammans sued the Debtor in the District Court Action. The Debtor defended the District Court Action by contending that he never intended to be personally responsible for returning the Tammans' monies because he acted only as a middleman between

the Tammans and his father and, therefore, was not a party to a contract with the Tammans. The Debtor also defended the District Court Action by contending that the Tammans provided money to the Debtor for investment, the Tammans bore the risk of any losses on the investments, and the Tammans' investments were worth nothing at the time the Tammans asked for the return of their money.

After a two day trial, the jury returned a verdict in favor of the Tammans, finding that the Debtor entered into a contract with the Tammans contemplating the Tammans' transfer of monies to the Debtor and obligating the Debtor to return the monies transferred by the Tammans, plus interest and that the Debtor breached the contract by failing to return the Tammans' monies. The District Court entered judgment for $1,389,327, with prejudgment interest from July 1, 2000. On February 9, 2006 the Debtor filed a petition under chapter 11 of the Bankruptcy Code. On October 6, 2006, the Tammans commenced this adversary proceeding seeking a determination that their claims against the Debtor are non-dischargeable.

By this motion, the Tammans seek summary judgment determining that the amounts adjudicated to be owed to them by the Debtor are non-dischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code. In support of their Motion, the Tammans' rely upon the record of the District Court Action. The Debtor opposes the motion on the grounds that the Tammans' sole cause of action in the District Court Action was for breach of contract and no claims of fraud, false pretense, misrepresentation or any similar claims were raised or litigated in that proceeding. It was not until after the Debtor filed his bankruptcy petition that any assertion of fraud was made by the Tammans. Accordingly, the Debtor asserts that the non-dischargeability claims represent entirely new and different claims for relief.

**Discussion**

Federal Rule of Civil Procedure 56(c), made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In reviewing a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In determining whether there are any genuine issues of material fact which would necessitate a trial, the Court must go beyond the mere pleadings of the parties, by examining all of the admissible evidence set forth in the papers and considering all inferences reasonably deducible from such evidence. *In re Esposito,* 44 B.R. 817, 821 (Bankr.S.D.N.Y.1984.)

The creditor seeking an exception to discharge bears the burden of proof in a nondischargeability proceeding to prove, by a preponderance of the evidence, that its claim satisfies the requirements of one of the discharge exceptions from section 523(a of the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279 (1991)). Exceptions to dischargeability are narrowly construed, an approach that implements the fresh start policy of the Bankruptcy Code. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996).

Normally proceedings involving discharge and dischargeability are not grist for summary judgment motions because they most often involve issues of intent, gleaned from invariably

disputed facts. *In re Bressler*, 2008 WL 686810 (Bankr. S.D.N.Y. 2008) *citing In re Esposito,* 44 B.R. at 821. However, the doctrine of collateral estoppel may be invoked to bar relitigation of factual issues underlying the determination of dischargeability. *Grogan v. Garner,* 498 U.S. at 285, n.11; *In re DeTrano*, 326 F.3d 319, 322 (2d Cir.2003); *In re Tobman*, 107 B.R. 20, 23 (S.D.N.Y. 1989). Thus, if the decision in the prior action determined factual issues using standards identical to those of section 523, then collateral estoppel would preclude the relitigation of those issues in the bankruptcy court. *See Brown v. Felsen,* 442 U.S. 127, 139 n. 10 (1979). Collateral estoppel is permissible as to a given issue if (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Dobbs v. Mehrlich (In re Dobbs)*, 2006 WL 2032961, 2 (S.D.N.Y. July 20, 2006) *aff'd.*, 227 Fed.Appx. 63 (2d Cir. Jun 29, 2007) *citing Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.,* 409 F.3d 87, 91 (2d Cir.2005). A bankruptcy court may, in appropriate cases, give preclusive effect to a civil jury verdict in determining the dischargeability of debts under section 523 based upon the entire District Court record. *In re Tobman*, 107 B.R. at 23; *Cooper v. Zois (In re Zois,)* 269 B.R. 89, 98 (Bankr.S.D.N.Y.,1999) ("Collateral estoppel will apply in a second proceeding that involves separate claims if the claims involve the same issue and the subject matter of the suits may be different as long as the requirements for collateral estoppel are met.")(citations omitted) *aff'd. Zois v. Cooper*, 268 B.R. 890 (S.D.N.Y. 2001), *aff'd. In re Zois,* 73 Fed.Appx. 509 (2d Cir. Sep 04, 2003).

Section 523(a)(2)(A) of the Bankruptcy Code provides that an individual debtor will not be discharged from any debt relating to money or property to the extent obtained by (1) false

pretenses, (2) a false representation, or (3) actual fraud.  11 U.S.C. § 523(a)(2)(A).  *See Citik Ka Wah Bank Ltd. v Wong (In re Wong)*, 291 B.R. 266, 273 (Bankr. S.D.N.Y. 2003).  The issue of nondischargeability under section 523(a)(2)(A) is determined under standards traditionally associated with an action for fraud under common law.  *See Field v. Mans*, 516 U.S. 59 (1995).  To establish non-dischargability, the creditor must prove by a preponderance of the evidence that: (1) the debtor made a false representation; (2) the debtor knew the representation was false at the time it was made; (3) the misrepresentation had been made with intent to deceive; (4) the misrepresentation was relied on by the creditor; and (5) the misrepresentation harmed the creditor. *In re Fenti*, 1994 WL 16167976, *2 (2d Cir. Oct. 4, 1994).

The Debtor's deposition testimony and his testimony in the District Court Action, along with the jury's special verdict and judgment, establishes that:

(1) The Debtor made promises to the Tammans with the intent of inducing the Tammans to transfer monies to the Debtor; [2]

(2) the Debtor promised the Tammans that their monies would be returned upon demand and that the Debtor was responsible for returning the Tammans' monies;[3]

(3) the Debtor did not intend to honor the foregoing promise when he made it, because in the

---

[2] *See* Transcript of trial in the District Court Action dated June 21, 2005 ("Trial Tr.") at 9:16-23;  Transcript of Deposition of Issac Schinazi dated April 23, 2002 ("Dep. Tr.") at 192:16-25(Q: "[W]ere you trying to encourage Mr. Tamman to to invest money with your father?" A: "Yes, of course."); *Tamman v. Schinazi*, 00 CV 9404 (GB) (S.D.N.Y. July 20, 2004) Memorandum Decision and Order ("Dec.") at 2 ("It is undisputed that defendant encouraged plaintiffs to place funds with defendant's father.")

[3] *See* Trial Tr. 14:16-18 (Q: "You told Mr. Tamman that if he wanted to withdraw his money, all he had to do was ask, right?"  A: "Yes");  Dec. at 2.("Defendant told plaintiffs that their principal would be guaranteed; the balance of their account would appreciate at a fixed monthly amount equal to one half of one percent; and that the money would be returned within weeks of a demand to defendant."); Receipt ("At end of any month this amount can be reimbursed upon request to the owner.")

Debtor's view, he made the promise as a mere middleman and did not intend to be personally responsible for returning the Tammans' monies;[4]

(3) the Debtor promised he and his father bore the risk for any losses on investments they made with the Tammans' monies;[5]

(4) the Tammans transferred monies to the Debtor in reliance upon the Debtor's promises;[6]

(5) the Tammans demanded the Debtor to return their monies;[7]

(6) the Debtor breached his promise by failing to return the Tammans' monies;[8] and

(7) the Tammans were injured in the amount of $1,389,327.[9]

In sum, according to the Debtor's sworn testimony, the Debtor knew that his representations that he would be personally responsible for returning the Tammans' money upon demand and that he and his father would bear the risk of loss on investments were false but that

---

[4] *See* Trial Tr. at 44:19-21 (Q: "Is it your testimony that you were only a middleman to a contract between the Tammans and your father?" A: "Yes."); Trial Tr. at 96:25-98:4; 117:17-19; Dec. at 2 ("Defendant acknowledges making these statements but claim [sic] he was merely relaying information to and from his father.")

[5] *See* Trial Tr. at 48:9-17 (Q; "So you knew Mr. Tamman wanted you to be responsible for the money: the receipt says fully responsible?" A: "Yes."); Trial Tr. at 46:18-21 (Q: "Despite being aware that [the Receipt] says you are fully responsible for the funds, you didn't make a notation anywhere indicating that you were signing only as a middleman, correct? A: "No"); Trial Tr. at 47:15-48:8 (Q: "When you gave this receipt to Mr. Tamman . .. Did you tell him on that day that you were not going to be responsible for his money?" A: "That I was not responsible, no, I didn't tell him that."); Dec. at 2.("Defendant told plaintiffs that their principal would be guaranteed"); Receipt ("Samy and Issac are fully responsible for the funds.")

[6] *See* Trial Tr. at 14:19-22.

[7] *See* Trial Tr. At 37:22-25; Dec. at 3.

[8] *See* Trial Tr. 38:4-7; Transcript in the District Court Action dated June 22, 2005 ("Verdict Tr.") (Q. 4 Did the defendant Issac Schinazi breach the contract by not returning funds to the plaintiffs? A. Yes)

[9] *See* Trial Tr. at 30:9-13.

such representations would induce the Tammans to transfer the money. *See Gomez-Cuevas v. Barrios (In re Barrios)*, A.P. No. 06-01909, 2007 WL 2406881, at 3 (Bankr. S.D.N.Y. Aug. 20,2007) ("If the Debtor had no intention of performing the obligations under the contract when he entered into the agreement, the debt is non-dischargeable."); *Hong Kong Deposit Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990)("[A]n intent to deceive can be logically inferred from a defendant's false representations which the debtor knows will induce another to make a loan.") Moreover, in light of the long relationship between the parties and the Debtor's and his father's reputation, the Tammans were justified in relying on the Debtor's representations and were not aware of any facts to suggest that the Debtor would be unable to return the money. *See Field v. Mans*, 516 U.S. at 74-75 (1995) (Holding that section 523(a)(2)(A) "requires justifiable, but not reasonable, reliance"); *Kuper v. Spar (In re Spar)*, 176 B.R. at 328 ("A long standing friendship or close personal relationship weighs heavily in favor of finding reasonable reliance."); *Lance v. Tillman (In re Tillman)*, 197 B.R. at 171. Lastly, there is no question that the Tammans were injured by relying upon the Debtor's representation.

**Conclusion**

Accordingly, the Tammans' motion for summary judgment is granted and the Tammans' judgment debt is nondischargable pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

SETTLE AN ORDER CONSISTENT WITH THIS DECISION.

Dated: New York, New York
     January 12, 2009

                                /s/ Burton R. Lifland
                                United States Bankruptcy Judge